15 F.3d 1084
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Thurman J. DAVIS, Plaintiff-Appellant,
v.
DEPARTMENT OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 92-16494.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 13, 1994.
Decided Jan. 31, 1994.
 
 1
 Before: GOODWIN, WIGGINS, and BRUNETTI, Circuit Judges,
 
 
 2
 MEMORANDUM*
 
 
 3
 Thurman J. Davis ("Davis") appeals the district court's summary judgment order affirming the final decision of the Secretary of the Department of Health and Human Services (the "Secretary") denying Davis' application for Disability Insurance Benefits and Supplemental Security Income pursuant to 42 U.S.C. Sec. 416(i) and Sec. 423. We affirm the denial of Davis' application for benefits, as we find that substantial evidence supports the decision of the Administrative Law Judge ("ALJ").
 
 
 4
 For purposes of assessing disability, we note that Davis was 48 years old, had completed the eighth grade, and had no further formal education or vocational training. Davis' past relevant work included jobs as a security/maintenance worker, a motel maintenance worker, an oil field mechanic, and a farm laborer. Davis terminated his employment on August 8, 1987, alleging disability since that date due to degenerative disc disease of the spine with herniated nucleus pulposis and coronary artery disease.
 
 
 5
 Davis had the burden to establish entitlement to disability benefits. Sanchez v. Secretary of Health and Human Servs., 812 F.2d 509, 511 (9th Cir.1987). However, in this case, since Davis showed he was unable to return to past relevant work, the Secretary had the burden to go forward with evidence of what specific jobs Davis was capable of performing. Perminter v. Heckler, 765 F.2d 870, 871-72 (9th Cir.1985). The Secretary satisfied this burden by applying the medical-vocational guidelines. Substantial evidence supports the ALJ's decision that Davis had no non-exertional limitations that would significantly restrict the range of sedentary work that he could perform; therefore, use of the guidelines was appropriate. Desrosiers v. Secretary of Health and Human Servs., 846 F.2d 573, 576-77 (9th Cir.1988) (a sufficiently severe, non-exertional impairment may limit claimant's functional capacity in ways not contemplated by the guidelines, rendering the guidelines inapplicable). Since use of the guidelines was appropriate, the Secretary did not need to use a vocational expert. Perminter, 765 F.2d at 872.
 
 
 6
 The definition of sedentary work states that:
 
 
 7
 Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
 
 
 8
 20 C.F.R. Sec. 404.1567(a) (1993). The Social Security Rulings further explain that "[s]ince being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."
 
 
 9
 In this case, Davis complained of pain in his back and while sitting, which he argues makes him unable to perform the full range of sedentary work. Davis testified that he sits in a recliner to relieve his pain, which causes him severe functional limitations so that he can stand one hour, can sit 30 minutes, and has difficulty sleeping. He also stated that he does no housework or yardwork and drives only a little.
 
 
 10
 The ALJ considered and rejected Davis' complaints. Specifically, the ALJ noted that x-rays and thermograms were normal, that Davis had normal range of motion, and that the examining physicians stated that Davis "had a mild if any decreased range of motion with no significant findings to substantiate his subjective complaints." The ALJ recognized that Davis' physicians had not stated he was permanently disabled but had recommended job rehabilitation. Davis refused surgery for his cervical spine and did not take medicine for his back, both facts the ALJ found inconsistent with a severe pain syndrome. Finally, the ALJ noted that at the time Davis had physical therapy and traction, he stated that this treatment had greatly improved his pain. Based on this evidence, the ALJ "found his testimony not credible, especially in light of his treating and examining physicians' conclusions that he should be rehabilitated, and his refusal of surgery." The district court found that the ALJ did not address the issue of prolonged sitting. However, the above findings regarding back pain and Davis' credibility consider and then reject the possibility that back pain or the inability to sit for prolonged periods restricted the range of sedentary work that Davis could perform.
 
 
 11
 Substantial evidence supports the ALJ's findings. Davis' treating physician, Dr. Lewis, discussed prolonged sitting as a problem in only one evaluation, and his statement focused on rehabilitation. In this report from April 12, 1988, Dr. Lewis stated that "I think we should still continue to try to rehabilitate this patient for some type of work activity not requiring frequent bending, stooping, heavy lifting, or prolonged sitting. Perhaps a messenger clerk is one possibility." In his Permanent Disability Rating Evaluation dated May 17, 1988, Dr. Lewis stated that he "would rate the patient's subjective factors of permanent disability as slight subjective complaints indicating they cause some handicap in performing the activity which precipitates pain. ... The patient's work restriction definition I would rate at this time as disability precluding heavy lifting, repeated bending and stooping.... Rehabilitation is necessary to rehabilitate the patient for work not requiring frequent bending, stooping, or heavy lifting." Dr. Lewis also discussed rehabilitation on January 26, 1989, when he stated that "[w]e will schedule the patient for the B-20 examination to determine what his power strength as concerns his back as the low back pain does not appear to be severe at this time and the patient should be considered for some type of rehabilitation program." Dr. Lewis' remarks provide substantial evidence to support the ALJ's conclusions and decision that neither back pain nor the inability to sit for prolonged periods were non-exertional limitations.
 
 
 12
 The ALJ also addressed Davis' claim that difficulty performing tasks requiring manual dexterity eliminated or limited the sedentary occupational base. He found Davis' testimony regarding weakness, numbness, and a lack of fine dexterity in the right hand incredible and concluded that Davis did not have a severe hand impairment. The ALJ stated that
 
 
 13
 [Davis] did not otherwise describe the nature, location, onset, duration, frequency, radiation, intensity or precipitating or aggravating factors of his symptoms in any detail. Significantly, he has only sought sporadic help for this, and even more significantly his physicians have not recommended surgery or other aggressive treatments for this problem, as would be expected for a severe hand impairment. Moreover, they have not even made a definite diagnosis. The claimant did not testify about any medicines or alternative pain relief methods he has used for this impairment, as would be expected from a severe hand impairment. Moreover, he testified he has difficulty lifting with this hand, but did not otherwise describe functional or daily activity restrictions caused by his right hand symptoms. Based on the above testimony and evidence, I did not find the claimant's allegations of a severe hand impairment credible and I conclude he failed to meet his burden of showing that he has a severe hand impairment.
 
 
 14
 Substantial evidence from Davis' doctors, including his treating physician, supports the ALJ's conclusion that Davis' complaints regarding weakness, numbness, and a lack of fine dexterity in his right hand were incredible and should not limit the range of sedentary work that Davis could perform.
 
 
 15
 Medical opinions and conclusions of treating physicians are accorded special weight because physicians are in a unique position to know patients as individuals, and because the continuity of their dealings with claimants enhances their ability to assess the patients' problems. Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.1988); Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir.1988).
 
 
 16
 The ALJ considered Davis' complaints of pain and limitations, made specific findings to support his conclusions, and did not "arbitrarily discredit a claimant's testimony regarding pain." See Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir.1991) (The ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.").
 
 
 17
 Substantial evidence supports the ALJ's specific rejection of Davis' complaints of pain and the ALJ's finding that Davis could perform the full range of sedentary work. Therefore, the use of the medical-vocational guidelines to find that Davis is not disabled was appropriate, without a vocational specialist.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3